UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| JOSEPH D. MATTINGLY, SR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:08 CV 169 |
| | ) | |
| HEARTLAND EXPRESS, INC., | ) | |
| OF IOWA, | ) | |
| Defendant. | ) | |

### OPINION and ORDER

Plaintiff Joseph D. Mattingly, Sr. ("Mattingly") claims that his former employer, defendant Heartland Express, Inc., of Iowa ("Heartland") pressured him to drive his truck more hours than allowed by federal law and to falsify logbooks to cover the violations, and when he complained to Heartland about those practices, he was fired in violation of both federal and Indiana state law. The case is now before the court on Heartland's motion for summary judgment pursuant to FED. R. CIV. P. 56. (DE # 23.)

**I.     BACKGROUND**

The court briefly explains the parties' positions. Although very few of the underlying facts are disputed, this explanation is not intended to be a statement of undisputed facts, merely an overview to provide context for the analysis that follows. In that analysis, the court will refer only to undisputed facts or—if a material fact is disputed—to the version most favorable to Mattingly, and will draw all reasonable inferences in Mattingly's favor. As it turns out, however, few of the details that follow are even material to resolution of Heartland's motion for summary judgment.

Heartland is a large national trucking company, and it employed Mattingly as an over-the-road[1] driver. Federal regulations limit the amount of time drivers can drive in a day, and the amount of time they can be on duty, whether they are driving or not: a driver can drive no more than 11 cumulative hours in a day (after being off work for at least 10 consecutive hours), and whether driving or not, a driver cannot be on-duty for more than 14 consecutive hours without a mandatory break period. 49 C.F.R. § 395.3(a). These regulations are commonly called the "11-hour rule" and the "14-hour rule."

On October 28, 2007, Mattingly wrote two letters to Heartland complaining that he was being required to break these rules. Less than two weeks later, on Friday, November 9, 2007, Mattingly began his work day at 4:11 a.m. and delivered a load of freight to Franklin Park, Illinois. At 8:30 a.m. his dispatcher at Heartland directed him to proceed to Kenosha, Wisconsin, to pick up a load scheduled for 2:00 p.m. Mattingly refused to do so, at first stating that doing so would interfere with his "home time," that is, arriving home on Friday evening in order to be home for the weekend.[2]

About 10 minutes later, he informed his dispatcher that picking up the load in Kenosha would require him to violate the 14-hour rule. Heartland's dispatcher then

---

[1] The parties have used this term without defining it. One website found by the court states: "Over the Road trucking or OTR is a form of tractor trailer driving. OTR driving involves making deliveries to some or all of the continental 48 states and parts of Canada. . . . Some OTR trucking jobs are regional and involve less long-distance travel. In some instances, regional carriers also include weekends off." http://www.careersingear.com/trucking-categories/OTR

[2] Mattingly was a non-custodial parent who had scheduled visitation periods with his daughter on alternating weekends.

sent a text message to Mattingly, asking him to call by phone to discuss the matter. Mattingly refused to do so, responding by text that he would only communicate by text. Mattingly then "dead-headed" his semi-tractor home to Ft. Wayne (that is, without a freight trailer attached), without receiving permission to do so, which Heartland considered to be an unauthorized use of its equipment. Heartland's Vice President for Operations considered the matter that weekend, and when Mattingly reported for work on Monday, he was fired for the stated reason of unauthorized use of company equipment.

Mattingly filed the present suit, claiming that the real reason for his discharge was to retaliate against him for his refusal to violate the 11 and 14-hour rules, and for lodging complaints about Heartland's requests that he violate those rules. Heartland has moved for summary judgment, arguing that it is entitled to judgment because Mattingly failed to pursue an available administrative remedy prior to filing suit, or alternatively that he has no evidence that retaliation was the real reason for his firing.

## II. LEGAL STANDARD

*A. Summary Judgment*

The FEDERAL RULES OF CIVIL PROCEDURE mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A summary judgment is required, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element

3

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (commenting on portions of RULE 56(c) which, as of December 1, 2010, are in subpart (a)). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe,* 42 F.3d at 443.

### III. ANALYSIS

#### A. Federal law – exhaustion requirement

In his complaint, Mattingly pleads that his discharge was in violation of federal law, without specifying a specific statute or law violated. He does not dispute Heartland's assertion that his claim is based on the Surface Transportation Assistance

Act of 1982, 49 U.SC. § 31105.[3] In simple terms, and as relevant here, § 31105(a) provides than an employer may not discharge, discipline or discriminate against an employee because the employee has filed (or is suspected to be about to file) a complaint concerning commercial motor vehicle safety regulations, or because the employee refuses to violate any such regulations. An employee alleging conduct by his employer in violation of § 31105(a) "may file a complaint with the Secretary of Labor not later than 180 days after the alleged violation occurred." 49 U.S.C. § 31105(b). The Secretary of Labor is required to conduct an investigation, issue findings, and order relief if a violation is found. *Id*. The process allows both the complaining party, and the party against whom the complaint is made, to request a hearing before a final order is made. 49 U.S.C. § 31105(b)(2)(b). If the Secretary of Labor doesn't issue a timely final order, the complaining employee can bring an action for *de novo* review in United States District Court. 49 U.S.C. § 31105(c). In addition, any person adversely affected by a final order issued after a hearing may file a petition for review in the appropriate circuit of the United States Court of Appeals. 49 U.S.C. § 31105(d).

It is undisputed that Mattingly did not file a complaint with the Secretary of Labor concerning Heartland's termination of his employment. Heartland argues that doing so and exhausting that administrative process is a prerequisite to bringing an action for retaliatory discharge in district court pursuant to 49 U.S.C. § 31105(c). In other

---

[3] The Surface Transportation Assistance Act was originally enacted as 49 U.S.C. app. § 2305. On July 5, 1994, § 2305 was renumbered and reorganized without substantive change as 49 U.S.C. § 31105 by Pub. L. 103-272, § 1(e), 108 Stat. 745, 990.

words, Heartland argues that Mattingly's failure to seek the potential administrative remedy provided by § 31105 precludes him from bringing suit under § 31105(c).

Mattingly's response in opposition relies on subpart (f) of the statute, which provides:

> Nothing in this section preempts or diminishes any **other** safeguards against discrimination, demotion, discharge, suspension, threats, harassment, reprimand, retaliation, or any other manner of discrimination provided by Federal or State law.

49 U.S.C. § 31105(f) (emphasis added). Thus, Mattingly argues that nothing in § 31105 preempts his right to pursue a federal remedy.[4]

Mattingly, however, hasn't identified any safeguard under federal law which he is relying on other than the protection against retaliatory discharge found in § 31105(a), making this provision inapplicable on its face. Moreover, just as Heartland explains in its reply, his argument misses the point and is non-responsive. Preemption and exhaustion aren't the same, and Heartland isn't arguing that 49 U.S.C. § 31105 preempts other federal remedies. It is simply arguing that before Mattingly can bring an action in federal court asserting a violation of § 31105(a), he must first pursue, and exhaust, the administrative remedy provided in the statute. Mattingly hasn't made any argument directly opposing that contention.

---

[4] It actually appears that Mattingly's response argues only that his state law remedies are not preempted, without even addressing his right to bring a federal claim. The court will construe his argument broadly, however, just as Heartland did, and assume that he means his preemption argument to apply to both his federal and state legal theories.

However, the court cannot grant summary judgment simply because Mattingly has failed to oppose Heartland's argument. Instead, Heartland is entitled to summary judgment only if it is correct that exhaustion is required under § 31105. Heartland believes that 49 U.S.C. § 31105 doesn't expressly state an exhaustion requirement, and admits that after diligent research it has failed to find a case specifically considering the issue of whether § 31105 requires exhaustion.[5] (DE # 24 at 11.) Thus, Heartland argues that an exhaustion requirement is to be discerned by interpreting congressional intent, with an emphasis on the role Congress has given to the relevant federal agency. *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 502 n. 4 (1982). Heartland compares § 31105 to similar statutes which require exhaustion, and argues for the same result here.

This is the approach to be used when a statute does not contain an exahustion requirement; and while the court greatly appreciates Heartland's conservative approach to the issue—unlike many cases before the court, in which parties advance propositions so lacking support as to be ludicrous—the court finds that it disagrees with Heartland's assumption that the statute doesn't expressly require exhaustion. As a matter of semantics, Heartland may be correct. But the plain language of the statute makes the

---

[5] Strictly speaking, there are no such cases, as Heartland states. However, there are two unreported cases, *Zaleski v. Customized Transport., Inc.*, 1991 WL 353847 at * 2 (E.D. Mich. 1991), and *Wiglesworth v. Chauffeurs, Teamsters & Helpers Local Union 771*, 1985 WL 3230 at * 5 n. 4 (E.D. Pa. 1985) which assume without discussion that exhaustion is required; and *Norman v. M.S. Carriers, Inc.*, 741 F. Supp. 148, 150 (W.D. Tenn. 1990), which holds that the administrative remedy provided, including subsequent judicial review of the Secretary's decision, is exclusive. Although all three cases involve the statutory predecessor to § 31105, 49 U.S.C. app. § 2305, the nearly identical substance of the statutes makes the cases equally relevant.

filing of a complaint with the Secretary of Labor, and the Secretary's failure to issue a timely decision, a prerequisite to the complainant's having the right to file an action in district court. Specifically, the statute provides:

> With respect to a complaint under paragraph (1), *if* the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy, and which action shall, at the request of either party to such action, be tried by the court with a jury.

49 U.S.C. § 31105(c) (emphasis added).

Thus, the statute conditions the existence of an action in United States District Court on the Secretary of Labor's failure to issue a final decision within 210 days after the filing of a complaint with the Secretary. It is difficult to see how there could be a more plainly-expressed requirement to file a complaint with the Secretary of Labor before pursuing a federal action. *Cf. Nieman v. Nationwide Mut. Ins. Co.*, 706 F. Supp.2d 897, 907 (C.D. Ill. 2010) (finding similar provision in Sarbanes-Oxley Act a prerequisite to federal jurisdiction). It is undisputed that Mattingly did not do so. For this reason, Heartland will be granted summary judgment on Mattingly's action under § 31105(c).

B. State law – existence of action

Indiana adheres to the "employment-at-will" doctrine, which means generally that as long as no law such as those prohibiting discrimination is violated, an employer

8

can fire an employee for a good reason, a bad reason, or for no reason at all. *Bregin v. Liquidebt Systems, Inc.*, 548 F.3d 533, 536 (7th Cir. 2008). Thus, with limited exceptions, a terminated employee in Indiana has no cause of action for retaliatory or otherwise wrongful discharge. The recognized exceptions, based on sound public policy, protect employees who are terminated for refusing to engage in criminal conduct, and those terminated solely for exercising a statutorily-conferred right. *Id.* (citing *McClanahan v. Remington Freight Lines, Inc.,* 517 N.E.2d 390 (Ind.1988); *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (Ind.1973); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 502-03 (7th Cir. 1999).[6]

Indiana interprets these exceptions to employment-at-will very narrowly. Therefore, if the employee has a statutory remedy, allowing him to bring a common-law action rather than using the statutorily-provided remedy would be an unwarranted expansion of the exceptions. *Groce*, 193 F.3d at 503-04. Heartland argues this is the reason it is entitled to summary judgment here on Mattingly's alleged state-law claim: he had an available remedy under federal law, the ability to file a complaint with the Secretary of Labor. Because he failed to avail himself of that remedy, it would unnecessarily expand the scope of Indiana's public policy exceptions to allow him to bring a state common-law action for wrongful discharge.

---

[6] In addition to the public policy exceptions, Indiana recognizes that independent consideration may support termination for cause only, and so may promissory estoppel. *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 718 (Ind. 1997).

Mattingly's response in opposition again is that 49 U.S.C. § 31105(f) specifically provides that the federal statute does not preempt other safeguards against wrongful discharge, and therefore his remedies under Indiana law are unimpaired; and again, as Heartland argues in its reply, this misses the point. No Indiana state-law remedies are being preempted. Instead, no such remedies, as exceptions to Indiana's employment-at-will doctrine, come into existence in the first place, because there is an adequate statutory remedy. As Judge Hamilton, speaking for the Southern District of Indiana, explained in an unpublished decision: "In essence, where the legislature has spelled out the public policy and the remedy, the remedy is part of the public policy, and it does not need a common law supplement." *Combs v. Indiana Gaming Co.*, L.P., 2000 WL 1716452, at * 2 (S.D. Ind. 2000).[7]

Mattingly did not pursue the statutory remedy available to him, by first filing a complaint with the Secretary of Labor. Therefore, allowing him to bring an action under state law for wrongful discharge would unnecessarily expand Indiana's narrow public policy exceptions to employment at will. For this reason, Heartland's motion for summary judgment will be granted.

---

[7] Unlike *Combs*, in the present case the Indiana legislature created neither the right to be vindicated, nor the statutory remedy for doing so. Instead, Congress did. In the court's view, this distinction is irrelevant. What is important is that Congress created both a right and a remedy for an alleged violatin of that right. That makes it unnecessary for an Indiana common-law action to exist.

C. Merits of Mattingly's claim

Heartland has argued in the alternative that if the court does not find that Mattingly's failure to file a complaint with the Secretary of Labor negates the existence of both his federal and state claims, the undisputed facts demonstrate that he was terminated for his unauthorized use of company equipment, and not because he refused to engage in illegal conduct, or in retaliation for his reporting of illegality. Given the court's analysis above, consideration of this argument is not necessary, and would amount to an advisory opinion.

**IV. CONCLUSION**

It is undisputed that plaintiff Mattingly did not file a complaint with the Secretary of Labor pursuant to 49 U.S.C. § 31105(b). For the reasons explained above, that means that Heartland is entitled to judgment as a matter of law, and its motion for summary judgment (DE # 23) is **GRANTED**. The clerk shall enter final judgment in favor of defendant Heartland Express, Inc., of Iowa.

**SO ORDERED.**

Date: March 14, 2011

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT